```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA

TROY D. GOFF,                  )
                               )
          Plaintiff,           )     4:10CV3023
                               )
     v.                        )
                               )
MICHAEL J. ASTRUE,             )     MEMORANDUM AND ORDER
Commissioner of Social         )
Security,                      )
                               )
          Defendant.           )
                               )
```

This matter is before the Court for judicial review of a final decision of the defendant Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). The Commissioner denied Troy D. Goff's ("Goff") application for a period of disability and disability insurance benefits, finding Goff was not under a disability at any time from the alleged onset date, November 15, 2004, to the date last insured ("DLI"), December 31, 2009. Upon review, the Court finds the Commissioner's decision is supported by substantial evidence and should be affirmed.

I.   BACKGROUND

Goff was born on August 31, 1968. (Tr. 20). Goff has a high school education and is able to communicate in English. *Id.* Goff was trained as a firefighter in the Army. (Tr. 214). He left the Army in 1996, upon his honorable discharge. *Id.* He then worked in the dry wall industry, engaging in heavy manual labor until his alleged disability began on November 15, 2004. (Tr. 214,

218-19). Goff also worked as an industrial truck driver. (Tr. 20). Goff has engaged in odd jobs since 2004- working an hour here or there, doing favors for friends or assisting with dry wall activities. (Tr. 17, 215). Goff last worked in 2006 by helping a friend hang drywall. (Tr. 17). At the time of his hearing, Goff had been living at a Salvation Army facility in Grand Island, Nebraska. (Tr. 18). Prior to that, during his period of alleged disability, he lived in a homeless shelter in North Platte, Nebraska, and also with his girlfriend's brother for two years in North Platte, Nebraska. *Id.*

**A. Medical Records**

Approximately eleven years before Goff's alleged disability began, in August, 1993, Goff was in a motor vehicle accident where he ran his car into a pole. (Tr. 141). Goff suffered a closed-head injury, facial lacerations, and knee lacerations, including a fractured right tibia. (Tr. 143). Goff had surgery upon admittance, which consisted of an open reduction internal fixation of his right tibial, bilateral arthrotomies, and facial laceration closure. (Tr. 145). Subsequent to surgery, Goff was seen at Rehabilitation Service for ambulation treatment with endurance and motor strengthening. (Tr. 141). He also received occupational, physical, and cognitive therapy consultations. *Id.* His level of vocal hoarseness was evaluated, but the results were negative. *Id.* Goff was discharged on August 24, 1993. He was

noted to have done very well with his transfers and ambulation, and he was not prescribed any medication for pain upon release. *Id.*

On June 13, 2005, about twelve years later, and almost one year after his alleged disability began, Goff presented at the office of David Lindley, M.D., due to a complaint of knee pain (Tr. 150). Goff reported he was working in the drywall industry at the time, admitted to a history of substance abuse, and disclosed he was currently smoking up to three packs of cigarettes a day. *Id.* He also reported he sometimes took over-the-counter pain medications such as Advil and Tylenol. *Id.* Upon examination, Goff demonstrated a decreased range of motion in his right lower leg on full extension; however, his flexion, pulses, and reflexes were all good bilaterally. *Id.* Goff was given samples of Mobic, which is used to treat pain or inflammation, for his symptoms. *Id.*

Goff presented to the emergency room the following month in July, 2005, complaining of right knee pain. (Tr. 137). An x-ray of his right knee was obtained, but it showed no complications besides mild degenerative changes. (Tr. 140). Goff was again diagnosed with right knee pain and received non-steroidal anti-inflammatory medication. (Tr. 138-39).

Goff returned to Dr. Lindley's office a month later on August 1, 2005, complaining of the same knee pain, rating such pain as a "10" on ten-point scale. (Tr. 150). It was noted there was a lot of crepitus and pain on movement of his right knee. *Id.*

Goff also complained of chronic back pain and some left leg pain. *Id.* Goff claimed he was struggling financially, but would make plans to see an orthopedic surgeon in September. *Id.* Dr. Lindley gave Goff narcotic pain medication. *Id.* Goff missed his follow-up appointment in September. (Tr. 149).

On December 20, 2005, Dr. Lindley completed a consultative examination of Goff. (Tr. 152-156). Dr. Lindley noted that Goff was not currently taking any medication for pain because he claimed he could not afford it. (Tr. 153). Dr. Lindley reported that Goff had marked reduction in his range of movement, particularly in his right knee. *Id.* Goff also demonstrated pain in his lower lumbar spine, and reduction in range of movement of his spine and hips due to his right-knee pain. *Id.* Goff did not use a cane at this time. (Tr. 19). An x-ray of Goff's right knee was again obtained, showing loss of joint space with some sclerotic change consistent with osteoarthritis. (Tr. 153). An x-ray was also obtained of Goff's spine, showing loss of lumbar lordosis and some osteophyte formation and arthritis. *Id.* On the basis of Goff's history and this evaluation, Dr. Lindley found that Goff has some joint abnormalities which "prevent[ed] him from doing heavy work." (Tr. 154). Goff also claimed he had to constantly change positions when sitting due to back pain. *Id.*

At the request of the state on January 27, 2006, Jerry Reed, M.D., a state Disability Determination Service ("DDS")

physician, completed a physical residual functional capacity ("RFC") assessment based on review of Goff's file (Tr. 29, 164). Dr. Reed indicated that his assessment was consistent with Dr. Lindley's opinion that Goff could not perform heavy work. (Tr. 164). Dr. Reed further opined that Goff could lift 20 pounds occasionally and 10 pounds frequently, and sit, stand and/or walk for a total of six hours in an eight hour work day. (Tr. 158). Dr. Reed also found that Goff should never crouch or crawl, but he could occasionally climb, balance, stoop, and kneel. (Tr. 159).

At the request of the state on April 11, 2006, Glen Knosp, M.D., a DDS physician, completed an updated physical RFC assessment based on review of Goff's file (Tr. 165-72). His findings were largely consistent with Dr. Reed's findings, except that he found Goff could only stand and/or walk for at least two hours in an eight hour work day. (Tr. 166). Also, he found that Goff had limited ability to push or pull with his legs. *Id.* He did, however, find that Goff could occasionally crouch or crawl. (Tr. 167).

On March 23, 2007, Goff again presented to the emergency room, complaining of leg pain and swelling over the last three months. (Tr. 181-83). He was examined by David Hurst, M.D. *Id.* Dr. Hurst observed mild tenderness in Goff's left knee, and joint effusion, however, there was no swelling, deformity, or limitation in range of motion. (Tr. 182). There was also no motor deficit or

sensory deficit.  *Id.*  Dr. Hurst diagnosed arthritis of the left knee and advised Goff to ice his knee and elevate his leg until it improved and also prescribed narcotic pain medication.  *Id.*  Goff reported a pain level of a "4" on a ten-point scale.  (Tr. 179).

**B. Goff's Reported Symptoms**

At the July 30, 2008 hearing, Goff reported he felt constant pain in his legs, at the level of a "6" on a ten-point scale, and that he had to constantly change positions due to such pain.  (Tr. 215-16, 223).  Goff reported, however, he had not sought medical care in over a year, he did not use a cane, and that he took over-the-counter pain relievers "once in a while" when he experienced headaches.  (Tr. 215-16).  He also testified that he could sit for twenty to thirty minutes, stand for about twenty minutes at a time, and lift up to 15 pounds.  *Id.*  Goff also reported concentration and memory problems.  (Tr. 213, 222).

**C. Procedural Background**

On November 14, 2005, and November 18, 2005, Goff applied for disability insurance benefits and supplemental security income payments, alleging he became disabled on November 15, 2004.  (Tr. 14).  Goff's claims were denied initially on February 1, 2006, and upon reconsideration on April 11, 2006.  *Id.*  Thereafter, Goff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on May 17, 2006.  *Id.*  On July 30, 2008, Goff appeared in North Platte, Nebraska with counsel and the

ALJ held an administrative hearing.  *Id.*  Goff testified as did Judith L. Najarian, an impartial vocational expert.  (Tr. 14-21). In a decision dated August 19, 2008, the ALJ found that Goff was not disabled at any time from the alleged onset date through the DLI.  *Id.*

In evaluating Goff's claim, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).[1]  At step one, the ALJ found that Goff did not engage

---

[1] The ALJ performs the following five-step sequential analysis to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

in substantial gainful activity ("SGA") during the period from his alleged onset date of November 15, 2004, through his DLI of December 31, 2009 (Tr. 16).  At step two, the ALJ found Goff had the severe medical impairment of injury to the back and legs; the ALJ found Goff did not have any severe mental impairments relating to Goff's alleged concentration problems (Tr. 16-17).  At step three, the ALJ found Goff's impairment does not meet or medically equal one of the listed presumptively disabling impairments (Tr. 17).  At step four, the ALJ found that through the DLI, Goff:

> has the RFC to lift and carry 20 pounds on occasion and 10 pounds frequently; stand and/or walk two hours out of eight; sit for six hours out of eight; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

*Id.*  The ALJ found that based on his RFC, Goff was unable to perform his past relevant work as a drywall finisher or a truck driver. (Tr. 20).  However, at step five, the ALJ found that Goff was able to perform other light and sedentary jobs that existed in significant numbers in the national economy.  (Tr. 20-21).  The Appeals Council denied Goff's request for review; therefore, the ALJ's decision stands as the final decision of the Commissioner and is subject to judicial review under 42 U.S.C. § 405(g).

---

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

**II.   STANDARD OF REVIEW**

The Court reviews the record ". . . to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (quoting *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* "[The Court] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

**III.   DISCUSSION**

On appeal, Goff asserts several arguments alleging this Court reverse and/or remand the final decision of the ALJ. The issue in a Social Security case is whether the Commissioner's final decision is supported by substantial evidence on the record as a whole. The specific issues presented by this case are 1) whether the ALJ properly assessed Goff's credibility, 2) whether the ALJ properly determined Goff's RFC, and 3) whether substantial evidence supports the ALJ's finding that Goff could perform other work.

**A. Credibility Assessment**

Goff claims the ALJ improperly discredited his testimony concerning his pain and mental condition. An ALJ's credibility findings must be supported by substantial evidence. *Robinson v.*

*Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992). If the ALJ gives a "good" reason for discrediting the claimant that is supported by the record, the Court will defer to the ALJ's judgment. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

For the most part, the ALJ found Goff credible, as the ALJ agreed with Goff that Goff could no longer engage in his past work as a heavy laborer in the dry wall industry. The ALJ only discredited Goff on the fact that Goff claimed he could not engage in any work activity at all. As the government points out, the ALJ observed that Goff's alleged disability is based on injuries that occurred as a result of a 1993 car accident. In light of these injuries, Goff continued to engaged in heavy manual labor until 2004. (Tr. 19, 214). A claimant's ability to work despite impairments, "coupled with the absence of evidence of significant deterioration" since the time the claimant last worked, suggests that claimant can still work. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("the fact that Goff worked with the impairments for over three years after her strokes, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairments are not disabling in the present.")

Further, while Goff alleged concentration and memory problems, also occurring as a result of his car accident, these

-10-

issues did not prevent him from working in the past, and there was no medical evidence on the record suggesting that Goff's physical or mental condition suddenly deteriorated at the time he alleged his disability began.  Thus, the Court finds the ALJ's credibility assessment concerning Goff was supported by good reasons and is consistent with the substantial evidence of the record.  Further, the record as a whole does not demonstrate the ALJ should have further obtained some sort of consultive examination as to Goff's alleged mental problems.  Thus, the ALJ's credibility findings should be affirmed.

**B. RFC**

A claimant's RFC is the most he can do despite the combined effect of his credible limitations.  *See* 20 C.F.R. § § 404.1545, 416.945 (2010).  It is the claimant's burden to prove his RFC at step four of the sequential evaluation, and it is the ALJ's responsibility to determine RFC based on all relevant evidence, including medical opinions.  *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Goff claims the ALJ's RFC assessment is incorrect, largely based on the fact that in Dr. Lindley's consultive examination, Dr. Lindley noted Goff claimed he had to constantly change positions when seated due to his pain. (Tr. 154).  However, such was not a finding of Dr. Lindely, only a notation made in a section of his assessment that Goff could not longer engage in

-11-

"heavy work." *Id.* As the ALJ gave good reasons for doubting Goff's subjective complaints of pain, he was not obligated to credit this particular complaint. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence on the record.") That being said, the ALJ did give considerable weight to Dr. Lindley's opinion, as he also found Goff could no longer engage in heavy work, which was consistent with the opinions of the non-examining physicians. (Tr. 19, 158-64, 165-72).

The ALJ considered all of the evidence on the record, and sufficiently found that Goff is now restricted to sedentary work, a significant restriction that accounted for all of Goff's limitations. (Tr. 19). Goff points to no medical opinion supporting greater limitations than the ALJ assigned. As substantial evidence supports the ALJ's RFC finding, it should be affirmed.

**C. Goff's Ability to Perform Other Work**

The ALJ found that Goff could not perform his past relevant work as a drywall finisher. Thus, the burden shifted to the Commissioner to prove that there were other jobs in the national economy that Goff could perform. (Tr. 19). *See* 20 C.F.R. § § 404.1520(a)(4)(v), 416.920(a)(4)(v) (2010). The ALJ met this burden by questioning a vocational expert about a hypothetical

-12-

claimant with a RFC identical to Goff's. (Tr. 229). *See Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) (a vocational expert's response to a complete and correctly-phrased hypothetical provides substantial evidence for the ALJ's step-five conclusion). The vocational expert testified that Goff could work as an office clerk, information clerk, and hand laborer. (Tr. 229).

Although the vocational expert did testify that if Goff also had occasional problems maintaining attention, concentration, and pace, no jobs would exist in the national economy that Goff could perform, Goff failed to establish through objective medical evidence that he suffered attention, concentration, or pace problems. (Tr. 230-31). In fact, as the government points out, Goff did not discuss significant mental problems with the medical sources who treated him. As there was no medical basis for concentration or memory problems, Goff cannot establish a disability based on these issues. The ALJ's findings concerning Goff's ability to perform other work should be affirmed.

## IV. CONCLUSION

Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision will be affirmed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 17th day of May, 2011.

BY THE COURT:

S/ F.A. Gossett, III
United States Magistrate Judge